J-A02029-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIO FUENTES | : | |
| | : | |
| Appellant | : | No. 347 WDA 2025 |

Appeal from the PCRA Order Entered March 3, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0006631-2018

BEFORE:  STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:          **FILED: January 16, 2026**

Julio Fuentes (Appellant) appeals from the order dismissing without an evidentiary hearing his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  After careful review, we affirm.

On direct appeal, this Court summarized the relevant history underlying this appeal:

> [Appellant] lived in an apartment with his wife and their four children.[2]  [Appellant's] mother-in-law, who had legal custody of the seven-[ ]to[ ]eight-year-old victim [(the victim)], inhabited another apartment that was down the hall from [Appellant].  [The victim is not biologically related to Appellant or his family.]  The victim would split time between the two apartments, depending on the mother-in-law's work obligations.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] The record indicates that [Appellant] would only sometimes stay in this apartment.  ***See, e.g.***, N.T., 11/20/19, at 74.

Through the victim's testimony, she described one incident where [Appellant] touched her genital area and thereafter proceeded to manipulate her hand to touch his genital area. In a separate event, the victim communicated that she had been handcuffed to a bed, gagged, blindfolded, and then raped by [Appellant].

After these acts transpired, the victim confided in a mandated reporter at her school,[3] which led to a forensic interview.[4] However, because that interview did not yield a disclosure, the police took no further action on this first [ChildLine] report. The victim would later indicate that she did not reveal anything at this interview because she was afraid of [Appellant].

Just shy of two years later, another mandated reporter, this time at the Office of Children, Youth, and Families (CYF), sent a second [ChildLine] report into the Allegheny County Police Department. Correspondingly, the victim participated in a second forensic interview, which resulted in [Appellant's] arrest. The victim believed that it was safe to disclose pertinent information about [Appellant's] treatment of her at this second interview because she was safely out of her previous living situation by that point.

While [the victim] could not remember all the details about the second incident with [Appellant] involving the handcuffs, she remembered that [Appellant's] wife told the victim to go get Halloween candy from the couple's bedroom[,] whereafter [Appellant] followed her into the bedroom and then assaulted her. [Appellant's] wife had apparently left the apartment directly after allowing the victim to get the candy. [Appellant] stopped when he heard his wife reenter the apartment.

---

[3] *See* 23 Pa.C.S.A. § 6311(a)(4).

[4] Although the timeline is unclear, the victim seemingly first tried to tell [Appellant's] wife and a friend of the wife about [the victim's] first sexual encounter with [Appellant], but neither believed nor helped the victim. *See* N.T., 11/20/19, at 56.

*Commonwealth v. Fuentes*, 272 A.3d 511, 514-15 (Pa. Super. 2022) (footnotes in original; footnote designations modified).

Appellant's first two jury trials ended in mistrials, as each jury was unable to agree upon a verdict. Following a third trial, the jury convicted Appellant of rape of a child, unlawful restraint of a minor, indecent assault, corruption of minors, and unlawful contact with a minor.[5] The trial court sentenced Appellant to an aggregate prison term of 14-28 years, followed by 15 years of probation.

On direct appeal, this Court affirmed Appellant's convictions, but remanded for the calculation of time credit owed to Appellant for his pre-trial incarceration, and for resentencing in accordance with that determination. *Fuentes*, 272 A.3d at 523. On remand, the trial court entered an amended sentencing order granting Appellant 677 days of time credit. Amended Sentencing Order, 6/7/22.

On June 2, 2023, Appellant timely filed the instant counseled PCRA petition, his first. From June 20, 2023, through July 8, 2024, Appellant requested, and was granted, numerous extensions of time within which to file an amended PCRA petition. On October 7, 2024, Appellant filed another motion for an extension of time. Motion for Extension of Time, 10/7/24. The

---

[5] 18 Pa.C.S.A. §§ 3121(c), 2902(b)(2), 3126(a)(7), 6301(a)(1)(ii), 6318(a)(1).

PCRA court denied Appellant's motion on October 9, 2024. PCRA Court Order, 10/9/24.

Appellant nevertheless filed an amended PCRA petition on October 14, 2024. The Commonwealth filed a response to Appellant's petition on December 9, 2024. On March 3, 2025, after appropriate Pa.R.Crim.P. 907 notice, the PCRA court dismissed Appellant's PCRA petition without an evidentiary hearing. Appellant timely filed a notice of appeal. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Whether trial counsel provided ineffective assistance by failing to properly cross-examine and impeach the victim at [Appellant's] third trial?

2. Whether trial counsel provided ineffective assistance by failing to recognize that it was permissible to explore the child victim's knowledge of sex?

Appellant's Brief at 4.

In reviewing an order denying PCRA relief, our standard of review "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citation and internal quotation marks omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal

conclusions." ***Commonwealth v. Mitchell***, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

Appellant first argues that his trial counsel rendered ineffective assistance by failing "to properly cross-examine and impeach the victim at [his] third trial." Appellant's Brief at 13 (capitalization modified). Appellant asserts that during his first trial, trial counsel cross-examined the victim regarding her comfort level in discussing the assault with the forensic interviewer at Children's Hospital. ***Id.*** at 14. Appellant asserts that trial counsel "got [the victim] to testify that handcuffs were used on her hands and feet." ***Id.*** Appellant points out that during cross-examination, the victim indicated she was able to stretch the entire length of the bed, even though she was only seven or eight years old at the time. ***Id.*** Appellant also directs our attention to the victim's testimony, at the first trial, that "she told her dad that these things happened to her after she moved in with him." ***Id.*** According to Appellant, the victim further testified she was uncertain where the other children were located at the time of the first incident. ***Id.***

Appellant states that during the second trial, the victim testified she was handcuffed to the headboard and footboard of the bed during the assault. ***Id.*** at 15. However, the victim also testified she was blindfolded and had a sock in her mouth. ***Id.*** The victim testified that she first disclosed the assaults to a CYF caseworker at her biological father's house. ***Id.*** Appellant states that

the victim testified the CYF caseworker visited because the victim "was bad in school." *Id.*

Appellant claims that during the third trial, trial counsel failed to highlight the many inconsistencies in the victim's prior testimony. *Id.* According to Appellant, these inconsistencies would have "severely impeached" the victim's credibility. *Id.*

Appellant asserts that at the third trial, the victim testified that she knew the location of the other children in the household during the first assault, contradicting her prior testimony. *Id.* In addition, Appellant claims his trial counsel failed to cross-examine the victim regarding being handcuffed to the headboard and footboard. *Id.* According to Appellant, his trial counsel failed to cross-examine the victim regarding whether she had disclosed Appellant's assault to her father, as she had indicated in the prior trial. *Id.* at 16.

Appellant further argues,

> [t]here were major discrepancies as to whether or not there were more than two incidents. The victim referred to a third incident at the preliminary hearing. She also referred to a fourth incident at the preliminary hearing. During the second trial, [the victim] was asked on direct whether or not anything else happened after the first two incidents – she indicated that she could not remember.

*Id.* Appellant asserts that trial counsel should have highlighted these inconsistencies during trial. *Id.*

Appellant claims counsel had no reasonable basis for failing to cross-examine the victim as vigorously at the third trial. *Id.* at 17. Regarding

prejudice, Appellant argues there is a reasonable probability the outcome of the trial would have been different if the jury had heard the inconsistencies surrounding the victim's multiple inconsistencies. *Id.*

In his second issue, Appellant argues that trial counsel rendered ineffective assistance by not questioning the victim about her knowledge of sexual matters. *Id.* at 18. Appellant points out that during closing arguments, the prosecutor argued that the victim had testified about details that a 12-year-old child would not know. *Id.* at 18-19. Trial counsel objected, indicating that testimony about the victim's past sexual experiences is barred. *Id.* at 19. However, the trial court ruled the prosecutor fairly responded to the evidence:

> [Appellant] can obviously suggest in argument that for a child of her age, she had seen a lot because of the circumstances [the victim] lived in. So you can explore that. For whatever reason, strategically, you chose not to. You could make that argument as well, and … for whatever reason, you chose not to.

*Id.* (citation to record omitted). Appellant argues trial counsel should have cross-examined the victim on her knowledge of sexual matters, and used that information during closing arguments. *Id.*

The Commonwealth counters that Appellant waived both issues. Commonwealth's Brief at 12. The Commonwealth argues that Appellant did not raise either issue in his original PCRA petition, and presented them in an amended petition filed without the permission of the PCRA court. *Id.* at 12-13. The Commonwealth argues that amendments to a PCRA petition are not

self-authorizing. *Id.* at 15 (citing *Commonwealth v. Baumhammers*, 92 A.3d 708, 730 (Pa. 2014)). The Commonwealth directs our attention to our Supreme Court's decision in *Commonwealth v. Reid*, 99 A.3d 470 (Pa. 2014), wherein our Supreme Court explained that the unauthorized filing of supplements and amendments to PCRA petitions are subject to waiver. Commonwealth's Brief at 16 (citing *Reid*, 99 A.3d at 484).

We first address whether Appellant's present issues, raised for the first time in his October 14, 2024, amended PCRA petition, are properly before us for review. As our Supreme Court has explained, a PCRA petitioner

> bears the onus of informing the PCRA court that he … seeks to add claims through an amended petition, and, in response, the court shall freely grant leave to amend where doing so achieves substantial justice consistent with the dictates of Pa.R.C.P. 905(A)[6]….

*Commonwealth v. Mason*, 130 A.3d 601, 627 (Pa. 2015) (footnote added). "[C]laims raised outside of a court-authorized PCRA petition are subject to waiver regardless of whether the Commonwealth raises a timely and specific objection to them at the time they are raised." *Id.*

In *Baumhammers*, the appellant/PCRA petitioner (the petitioner) raised an issue for the first time in his Supreme Court appellate brief. *Baumhammers*, 92 A.3d at 729. The petitioner claimed he preserved his

---

[6] Pennsylvania Rule of Criminal Procedure 905(A) provides, "[t]he judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A).

issue in his response to the Commonwealth's answer to the PCRA petition. ***Id.***

Under this procedural posture, our Supreme Court deemed the issue waived:

> Our criminal procedural rules reflect that the PCRA judge "may grant leave to amend … a petition for post-conviction collateral relief at any time," and that amendment "shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A); ***see Commonwealth v. Williams***, … 828 A.2d 981, 993 ([Pa.] 2003) (noting that the criminal procedural rules contemplate a "liberal amendment" policy for PCRA petitions). Nevertheless, **it is clear from the rule's text that leave to amend must be sought and obtained, and hence, amendments are not "self-authorizing."** ***Commonwealth v. Porter***, … 35 A.3d 4, 12 ([Pa.] 2012). Thus, for example, a petitioner may not "simply 'amend' a pending petition with a supplemental pleading." ***Id.*** Rather, Rule 905 "explicitly states that amendment is permitted only by direction or leave of the PCRA Court." ***Id.*** at … 12; ***see also Williams***, … 828 A.2d at 988 (indicating that the PCRA court retains discretion whether or not to grant a motion to amend a post-conviction petition). It follows that petitioners may not automatically "amend" their PCRA petitions via responsive pleadings.

***Baumhammers***, 92 A.3d at 730 (emphasis added).

Similarly, in ***Reid***, the appellant/PCRA petitioner (appellant) filed a series of supplemental petitions without first seeking or receiving the PCRA court's permission. ***Reid***, 99 A.3d at 483. On appeal, the Commonwealth urged the Supreme Court to deem the claims raised in the supplemental petitions waived, even though the PCRA court addressed the issues in its opinion (in light of "the Court's inclination to liberality in these proceedings"). ***Id.*** Our Supreme Court concluded that issues raised in the unauthorized supplemental petitions were waived:

> Notwithstanding the PCRA court's indulgence in addressing all of [a]ppellant's claims, we agree that it was incumbent upon

- 9 -

[a]ppellant to identify where in the record the supplemental petitions were authorized and/or to reconstruct the record if such authorization was provided off the record. Appellant has not done so. [The Supreme Court] has condemned the unauthorized filing of supplements and amendments to PCRA petitions, and held that claims raised in such supplements are subject to waiver….

*Id.* at 484 (citations omitted).

Instantly, Appellant's original PCRA petition asserted the following issue/argument:

1. Trial counsel provided ineffective assistance for failing to present certain aspects of [Appellant's] defense.

    [**APPELLANT**] **REQUESTS LEAVE TO FILE AN AMENDED PCRA PETITION**

    [Appellant] respectfully requests that he be permitted to amend his petition pursuant to Rule 905 of the Pennsylvania Rules of Criminal Procedure. Counsel needs additional time to communicate with [Appellant] and prepare a proper pleading. The Commonwealth will not be prejudiced by this request.

PCRA Petition, 6/2/23, at 8-9 (unpaginated) (emphasis in original).

Appellant requested *five* extensions of time to file an amended petition, all of which the PCRA court granted. PCRA Court Orders, 6/20/23, 9/21/23, 1/3/24, 4/3/24, 7/8/24. In its order granting Appellant's fifth request for an extension of time, the PCRA court granted Appellant 90 days within which to file an amended petition. PCRA Court Order, 7/8/24. Thus, Appellant was

required to file his amended PCRA petition on or before October 7, 2024.[7] Appellant failed to do so.

Instead, on October 7, 2024, Appellant filed his sixth motion for an extension of time. *See* Motion for Extension of Time, 10/7/24. The PCRA court denied the extension. PCRA Court Order, 10/9/24. On October 14, 2024, *without first seeking the PCRA court's permission*, Appellant filed an amended PCRA petition. Amended PCRA Petition, 10/14/24.

In his appellate brief, Appellant implies that the PCRA court accepted and considered his amended petition, stating that "[o]n January 29, 2025, [the PCRA court] issued a Notice of Intention to Dismiss the *Amended* PCRA Petition." Appellant's Brief at 8 (emphasis added). However, our review of the certified record discloses that the PCRA court's notice stated its intention to dismiss "*the PCRA Petition* without a hearing." PCRA Court Order, 1/29/25 (emphasis added). The PCRA court made no reference to Appellant's unauthorized amended PCRA petition. *See id.*

Similarly, in its March 3, 2025, dismissal order, the PCRA court stated the following:

---

[7] The 90th day fell on Sunday, October 6, 2024. Thus, Appellant had until Monday, October 7, 2024, to file his amended petition. *See* 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, … such day shall be omitted from the computation.").

> [U]pon review of [Appellant's] PCRA petition, and this [c]ourt's thorough review of the record, [the PCRA court] finds that the Petition does not contain issues of arguable merit.
>
> As such, the PCRA petition is DISMISSED without [a] hearing….

PCRA Court Order, 3/3/25. Once again, the PCRA court made no reference to Appellant's amended PCRA petition.

Under these circumstances, we conclude that the issues Appellant raises in this appeal, which were not presented in Appellant's original, authorized PCRA petition, are waived.[8] *See Reid*, 99 A.3d at 483; *Baumhammers*, 92 A.3d at 730. Accordingly, we affirm the PCRA court's order dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

1/16/2026

---

[8] On appeal, Appellant does not challenge the PCRA court's denial of his sixth request for an extension of time.

- 12 -